UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM JAMES COKE, SR.,

                       Plaintiff,

- against -

MEDICAL, DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, DR. FREDERICK BERNSTEIN, and DR. MORRIS CLARK,[1]

                       Defendants.

**OPINION AND ORDER**

17 Civ. 0866 (ER)

Ramos, D.J.:

      William James Coke, Sr. ("Plaintiff"), appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during his incarceration at Green Haven Correctional Facility ("Green Haven"). Plaintiff alleges that Dr. Morris Clark ("Clark") and Dr. Frederick Bernstein ("Bernstein") (collectively, "Defendants") violated his Eighth Amendment rights by providing inadequate medical care. *See* Amended Complaint ("Am. Comp.") (Doc. 15). Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defendants' Motion to Dismiss (Doc. 28).

      For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

---

[1] On March 17, 2017, the Court dismissed the Department of Corrections and Community Supervision from this action as immune under the Eleventh Amendment. Doc. 8 at 2.

I.   **FACTUAL BACKGROUND**[2]

At all times relevant hereto, Plaintiff was a convicted prisoner at Green Haven in Stormville, New York. Am. Comp. at 1. In March 2014, Bernstein, in his capacity as the Facility Health Services Director at Green Haven, contacted Plaintiff to inform him that Clark had been assigned as his primary care physician, to treat his hypertension and diabetes, among other medical issues. *Id*. at 3, ¶ 13; 12, 17, 41.

In June 2014, Plaintiff suffered from an allergic reaction and went to the emergency clinic for an appointment with Clark. *Id*. at 2, ¶ 1. During the appointment, Clark left the exam room for a moment and then returned to inform Plaintiff that he "changed one of [his] blood pressure medications to [L]isinopril." *Id*. at 2, ¶ 2. In July 2014, Plaintiff returned to the clinic again for another allergic reaction. *Id*. at 2, ¶ 3. During this visit, one of the nurses "yell[ed] and talk[ed] down to Plaintiff" and ordered him to continue taking the prescribed Lisinopril. *Id*. at 2, ¶ 4. On August 14, 2014, Plaintiff had to be removed from his cell and taken to the clinic with a swollen tongue. *Id*. at 2, ¶ 5. At the clinic, he was given steroids to reduce the swelling and taken to Vassar Brothers Medical Center ("Vassar") for a full evaluation. *Id*. at 3, ¶¶ 6–7. During transport, Plaintiff struggled violently and was instructed to "lay still or [he'd] make it worse." *Id*. at 3, ¶ 7. At Vassar, Plaintiff was diagnosed with an allergy to Lisinopril and was advised to stop taking the medication. *Id*. at 17. On August 17, 2014, Plaintiff returned to the Green Haven infirmary, and two days later he was released back to his cell. *Id.* at 3, ¶ 9.

---

[2] The following facts are drawn from allegations contained in the Amended Complaint (Doc. 15), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also draws facts from the exhibits to the Amended Complaint, which are properly considered on a 12(b)(6) motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010). Moreover, when a *pro se* plaintiff's opposition memoranda raises new allegations that are "consistent with the allegations" in the Complaint, these allegations may be read as "supplements to th[e] pleadings." *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014).

On August 22, 2014, Plaintiff returned to the emergency clinic for pain in his neck, shoulders, back, and chest. *Id.* at 3, ¶ 10. Dr. Clark diagnosed Plaintiff's pain as muscular stress. *Id.* at 4, ¶ 18. On August 28, 2014, Plaintiff filed a grievance regarding his allergic reaction to the Lisinopril. *Id.* at 3, ¶ 12. On September 2, 2014, Plaintiff was bedridden with a violent cough that was diagnosed as bronchitis. *Id.* at 3, ¶ 11. Plaintiff alleges that he suffered a "large and painful hernia" as a result of the bronchitis. *Id.* During mid-September 2014, Plaintiff presented to Clark with continuing complaints of pain. *Id.* at 3, ¶ 13. At this time, Clark re-diagnosed Plaintiff's pain as arthritis. *Id.* at 4, ¶ 18. During this appointment, Dr. Clark admitted he was wrong in previously prescribing the Lisinopril. *Id.* He also examined Plaintiff's hernia, ordered an MRI, and prescribed Neurontin for the pain. *Id.* at 3–4, ¶ 14. Upon examining the hernia, Dr. Clark asked Plaintiff whether he had "recently experienced an injury," and Plaintiff replied that he had on August, 14, 2014, referring to the allergic reaction and his violent physical response. *Id.*

In late September 2014, Plaintiff complained of his ongoing pain to the Superintendent of Green Haven. *Id.* at 4, ¶ 15. On October 31, 2014, Bernstein sent Plaintiff a letter acknowledging the complaint to the Superintendent. *Id.* at 25. In this letter, Bernstein stated that he had reviewed Plaintiff's medical records and found that he was "being treated for symptoms and x-ray findings consistent with cervical and lumbar radicular/nerve root pain." *Id.* Bernstein concluded that treatment with Neurontin was appropriate for Plaintiff's nerve pain. *Id.* Moreover, Bernstein advised Plaintiff to make an appointment with Clark if his symptoms persisted. *Id.*

On November 24, 2014, Plaintiff underwent the MRI that had been ordered by Dr. Clark. *Id.* at 4, ¶ 17. The results of the MRI revealed that Plaintiff had "Myelomalacia," an abnormal

softening of the spine. *Id*. at 4, ¶ 19. Although it was "not considered clinically likely that the [the Myelomalacia] [was] a source of pain for [Plaintiff]," *id.* at 41, he was prescribed morphine, *id.* at 4, ¶ 17. By January 2015, Plaintiff had lost approximately 17 pounds and was diagnosed with a hernia following a CT scan. *Id*. at 4, ¶ 20. On May 5, 2015, Plaintiff's morphine prescription was discontinued following a diagnosis of osteoarthritis. *Id*. at 4, ¶ 18. In September 2015, Plaintiff was taken to see a pain management specialist who referred him to a neurologist. *Id*. at 6, ¶ 34. On November 25, 2015, Plaintiff underwent a C4-C5 anterior cervical discectomy and fusion in an attempt to treat his Myelomalacia. *Id*. at 6, ¶ 35.

## II. LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). This requirement, however, does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Rule 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

This same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson*, 709 F. Supp. 2d at 224 (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertions' devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### III. DISCUSSION

#### A. Deliberate Indifference

To establish an Eighth Amendment claim arising from inadequate medical care, a prisoner must prove that the prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The "deliberate indifference" standard embodies an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 837–39 (1994). To satisfy the objective prong, the alleged deprivation must be "sufficiently

serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the subjective prong, the plaintiff must demonstrate that the charged "officials act[ed] with a sufficiently culpable state of mind." *Id.* "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quotation marks and citation omitted).

Accordingly, in order for Plaintiff to establish that Defendants acted with deliberate indifference to his medical needs, he must prove both that (1) his condition was "sufficiently serious" and (2) that Defendants had a "sufficiently culpable state of mind." The Court will analyze each prong in turn.

### i. *Sufficiently Serious Condition – Objective Prong*

To establish that a medical condition was "sufficiently serious" a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Nance v. Kelly*, 912 F.2d 605, 602 (2d Cir. 1990) (Pratt, J., dissenting)). There are a variety of relevant factors that may be considered by the court in determining whether the medical condition rises to the level of "sufficiently serious." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).[3] Among these are the "existence of chronic and substantial pain" and "presence of a medical condition that significantly affects an individual's daily activities." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.

---

[3] The Second Circuit applied case law of other Circuits in coming to the conclusion that, although the list is not exhaustive, these factors were relevant in determining whether a serious medical condition existed. *Chance*, 143 F.3d at 702–03 ("We agree with the Eleventh Circuit that it is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining seriousness at the pleading stage.") (citations, alterations, and quotation marks omitted).

1992)).

Here, Defendants concede that Plaintiff's allegations of persistent pain adequately convey a "sufficiently serious" medical condition. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. 29) at 4 ("For purposes of this Motion only, Defendants assume that at least some of Plaintiff's allegations of chronic pain represent serious medical needs."). Moreover, in the Amended Complaint, Plaintiff alleges that his "8+ pain" began in August 2014 and lasted through the end of November 2015, at which time he underwent a C4-C5 anterior cervical discectomy and fusion. Am. Comp. at 6, 45. Accepting Plaintiff's allegations as true, the Court finds that an allegation of a 14-month period of extreme pain constitutes a "sufficiently serious" condition in a claim of deliberate indifference.

Finding the objective prong satisfied, the Court now turns to the subjective prong of the deliberate indifference analysis to determine whether Defendants had a sufficiently culpable state of mind.

### ii. *Sufficiently Culpable State of Mind – Subjective Prong*

Plaintiff alleges that both Defendants—Clark and Bernstein—were deliberately indifferent in failing to properly diagnose and treat his medical conditions during his incarceration at Green Haven. Am. Comp. at 4–6.

#### a. *Defendant Clark*

Plaintiff alleges that Clark breached his duty to "safeguard Plaintiff's health and safety when he disregarded a foreseeable risk and later admitted [he was] wrong" in prescribing the blood-pressure medication, Lisinopril, which caused Plaintiff's allergic reactions. Am. Comp. at 5, ¶ 23. Although Clark later admitted that he incorrectly prescribed the drug, the "prescription of medication to control Plaintiff's high blood pressure does not constitute deliberate

7

indifference to his medical needs." *Salam v. Parac*, No. 95 Civ. 4700 (SJ), 1997 WL 227995, at *3 (E.D.N.Y. May 1, 1997) (citing *U. S. ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (concluding that allegation of "faulty judgment on the part of the prison doctor in choosing to administer one form of the same medication instead of another" does not rise to a constitutionally cognizable claim of inadequate medical treatment); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")). There is a wide distinction between medical negligence and deliberate indifference sufficient to cause a constitutional violation. "For Defendants' alleged medical mistreatment to move beyond the realm of medical malpractice and into the realm of deliberate indifference, their conduct would have to be fairly characterized as "'repugnant to the conscience of mankind.'" *Id*. (quoting *Estelle*, 429 U.S. at 106). Therefore, although Clark's treatment in prescribing the Lisinopril to Plaintiff might have—at best—entered the realm of medical negligence, it does not rise to the level of culpability required for a deliberate indifference claim.

Plaintiff further alleges that Clark "applied an unspoken quick-fix policy" when treating Plaintiff's pain, thereby furthering his injuries. Am. Comp. at 5, ¶ 22. However, as Defendants correctly point out, an inmate's preference of an alternative treatment, or feeling that he did not get the level of medical attention he desired, does not evidence a sufficiently culpable state of mind. *See Sonds v. St. Barnabas Hosp. Correctional Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (noting that "the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred" does not constitute deliberate indifference). Moreover, mere disagreements over the quality or course of treatment provided do

8

not plausibly state an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see also Troy v. Kuhlmann*, No. 96 Civ. 7190 (BSJ), 1999 WL 825622, at *6 (S.D.N.Y. Oct. 15, 1999) ("[A] prisoner's disagreement with the diagnostic techniques or forms of treatment employed by medical personnel does not itself give rise to an Eighth Amendment claim."). "As long as the medical care is adequate, there is no Eighth Amendment violation." *Sonds*, 151 F. Supp. 2d at 311. Indeed, prison medical officers have wide discretion in treating prisoners, and "federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in tort law." *Id.* at 311–12 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given medical attention that judges would wish to have for themselves.")). Thus, the determinations made by medical providers concerning the treatment of patients are given a "presumption of correctness." *Id.* at 312 (quotation marks and citation omitted).

Plaintiff's allegations make clear that his medical condition was not ignored by Clark. In fact, according to the Amended Complaint, Plaintiff sought and received treatment from Clark for a variety of medical issues for a period of approximately nine months. *See* Am. Comp. at 4 (stating that the Clark treated Plaintiff from August 2014 through May 2015). Therefore, Plaintiff's allegations that Clark failed to properly diagnose his medical condition and properly treat it does not rise to the level of culpability required to plausibly state a deliberate indifference claim.

b. *Defendant Bernstein*

With respect to Bernstein, Plaintiff alleges deliberate indifference for failure to timely

refer him to a pain specialist. Am. Comp. at 5–6. Specifically, Plaintiff alleges that 13 months elapsed between his August 22, 2014 complaint of pain in his neck and back, and his September 21, 2015 referral to a pain management specialist. *Id.* at 6, ¶¶ 31–36. A delay in a referral for medical diagnosis, however, does not necessarily give rise to an Eighth Amendment violation. "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Culp v. Koenigsmann*, No. 99 Civ. 9557 (AJP), 2000 WL 995495, at *7–*8 (S.D.N.Y. July 19, 2000) (quoting *Demata v. NYS Dep't of Correctional Servs.*, No. 99-0066, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)). Moreover, a medical professional's discretionary decisions to not refer a patient or order certain tests do not constitute the level of culpability required for a deliberate indifference claim. *Cf. Estelle*, 429 U.S. at 107 ("A medical decision to not order an x-ray or like measures, does not represent cruel and unusual punishment."). Here, after reviewing Plaintiff's x-ray and symptoms, Bernstein determined that Plaintiff's ongoing treatment with Neurontin for his nerve pain was appropriate at that time, and instructed Plaintiff to contact his primary care physician, Clark, if his symptoms persisted despite treatment. Am. Compl. at 25. Notably, by that point, Clark had already scheduled an MRI for further evaluation of Plaintiff's pain. *Id.* at 3–4, ¶ 14. Following the November 24, 2014 MRI, Plaintiff was diagnosed with Myelomalacia, but it was "not considered clinically likely that the MRI finding [was] a source of pain for [Plaintiff]." *Id.* at 41. Nevertheless, Plaintiff was prescribed morphine. *Id.* at 4, ¶ 17. On May 5, 2015, following a diagnosis of osteoarthritis, Plaintiff's morphine prescription was discontinued. *Id.* ¶ 18. By July, Bernstein had scheduled

Plaintiff for an appointment with a pain management specialist, and was ultimately evaluated by that specialist on September 21, 2015. *Id.* at 6, ¶ 34. Plaintiff was thereafter referred to a neurosurgeon and underwent surgery on November 25, 2015. *Id.* at 6, ¶ 34. In view of these allegations, the Court concludes that Plaintiff has failed to allege that Bernstein deliberately delayed medical care to punish him, or that he deliberately ignored a life-threatening or serious condition. To the contrary, although Plaintiff may not have been referred for a pain management specialist as quickly as he would have wanted, he acknowledges that he was repeatedly treated for his pain, evaluated by x-ray and MRI, and ultimately seen by a pain specialist who referred him to a neurosurgeon. *Id.* at 6, ¶¶ 31, 34.

Accordingly, the Court finds that Plaintiff's Amended Complaint fails to plausibly allege a claim for deliberate indifference against Defendants Bernstein and Clark.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion (Doc. 28) and close the case.

SO ORDERED.

Dated: April 30, 2018
       New York, New York

                                        Edgardo Ramos, U.S.D.J